Filed 4/28/22  In re M.S. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>L.D.,<br><br>     Defendant and Appellant. | A162955<br><br>(City & County of San Francisco Super. Ct. No. JD19-3332) |

L.D. (Mother) appeals the juvenile court's orders denying her requests for reunification services and additional visits with her two-year-old son, M.S. (Welf. & Inst. Code, § 388; undesignated references are to this code.)  She argues the court abused its discretion by summarily denying the petitions without an evidentiary hearing.  We affirm.

**BACKGROUND**

The history of the dependency proceedings is set forth in this court's prior opinion, which we incorporate here by reference.  (*L.D. v. Superior Court of San Francisco* (Feb. 26, 2021, A161424) [nonpub. opn.].)  In that case, this court denied Mother's petition for a writ of mandate, which sought

1

to vacate orders removing M.S. from her care and bypassing her for reunification services. This court also denied her request to stay a permanency planning hearing under section 366.26. We briefly summarize the facts here and provide further details relevant to this appeal in the discussion section.

In December 2019, the San Francisco Human Services Agency (Agency) filed a juvenile dependency petition regarding M.S. — at the time a five-month-old baby — and detained him from A.S. (Father) after he physically abused Mother in M.S.'s presence. M.S. was placed with Mother. In February 2020, the juvenile court sustained allegations that M.S. was at risk of physical or emotional harm based on the parents' ongoing relationship and domestic violence (despite an active criminal protective order against Father); Mother's history of mental health and substance abuse issues; Mother's failure to reunify with J.D., her eight-year-old son who was the subject of another juvenile dependency petition; and subsequent termination of her parental rights as to J.D. (§ 300, subds. (b), (g), (j).) The court declared M.S. a dependent and ordered reunification services for Mother.

In November 2020 — after another incident of domestic violence between Mother and Father in March 2020; Father absconding with M.S.; Mother failing to comply with a juvenile court order to bring M.S. to the Agency; police finally locating M.S. at Mother's residence, which was in a hazardous condition for children; and M.S.'s placement in foster care in April 2020 — the court sustained additional allegations M.S. had suffered or will suffer serious physical and emotional harm, and it removed M.S. from Mother's care. The court also bypassed reunification services and scheduled a section 366.26 permanency hearing. It ordered supervised visitation for one hour each month between Mother and M.S.

In February 2021, the Agency filed a report recommending the termination of parental rights and approving adoption as M.S.'s permanent plan.  (§ 366.26.)  The social worker reported that while Mother appropriately cared for M.S. for the first nine months of M.S.'s life, Mother relapsed into using drugs and alcohol whenever she reconnected with Father after his release from jail.  Significantly, this relationship was in violation of a restraining order against Father — a factor that led to M.S.'s removal.  M.S., who at the time of the report was 18 months old, was happy and thriving with his foster parents.  The social worker observed an emotional bond between M.S. and his foster parents, who met his physical and emotional needs and provided him with stability.  Mother had monthly virtual visits with M.S. without incident.  During those visits, Mother sang songs and the alphabet to M.S.

In May 2021, Mother filed a petition to modify the juvenile court's November 2020 order.  (§ 388.)  She sought reunification services and weekly in-person visits.  In a declaration, she alleged there were various changed circumstances since the order terminating services.  Mother cited her engagement in individual therapy, domestic violence support groups, and online Alcoholics Anonymous and Narcotics Anonymous meetings; that she had no contact with Father; maintenance of sobriety for six months; and her full-time employment.  Mother stated M.S. recognized her as his mother.  According to Mother, reunification services and increased visitation were in the best interests of M.S. because "he deserved to grow up with his mother, who can safely care for him and meet all of his needs."  The modifications would "support their relationship," allowing M.S. to grow up with his family and be connected to his culture.  Attached to Mother's petition were documents verifying her full-time employment, completion of a job readiness

3

and digital essentials programs, confirmation she had one individual counseling session, and confirming she enrolled in a medical assisting phlebotomy program.

The juvenile court denied the petition without an evidentiary hearing. It concluded the petition "simply state[d] changed circumstances in a conclusory form." The court continued, "At this point I don't believe that there is a sufficient prima facie [*sic*] to show that there has been a change of circumstances." It noted there needs to be "evidence that shows a change, not an effort to change."

In June 2021, Mother filed a second modification petition, again seeking reunification services and weekly in-person visits. (§ 388.) Her supporting declaration largely repeated statements made in her previous petition — participation in domestic violence and women's support groups, participation in individual therapy, participation in Narcotics Anonymous and Alcoholics Anonymous, enrollment and regular attendance in medical assisting class. In addition, she noted she accepted various temporary jobs over the past seven months and completed a one-day course on domestic violence. Although Mother declared she had no contact with Father since mid-2020 and did not want to be in a relationship with him, Father was incarcerated during that time. The documents submitted in support of her petition were nearly identical to those submitted in support of her May 2021 section 388 petition. The only new document was a certificate confirming Mother's completion of a domestic violence course. The petition further stated reunification and additional visitation was in M.S.'s best interests because "he deserves to grow up with his mother, who can safely care for him and meet all of his needs," and to support the relationship with her.

4

The juvenile court denied Mother's second petition. After acknowledging Mother's supporting documentation and comparing the two section 388 petitions, the court stated, "I don't think that there is a prima facie [*sic*] at this point in regards to granting reunification services for Mom." More importantly, the court indicated the petition did not address how reunification and increased visitation served M.S.'s best interests.

## DISCUSSION

Mother contends her declarations and documentation regarding her sobriety, participation in domestic violence support groups, individual therapy, and employment were prima facie evidence of changed circumstances sufficient to trigger an evidentiary hearing on either of her section 388 petitions. According to Mother, the juvenile court abused its discretion by denying her petitions without such a hearing to address her allegations. We disagree. The court acted within its discretion by summarily denying both of Mother's petitions. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158 (*G.B.*) [decision to deny section 388 petition without an evidentiary hearing reviewed for abuse of discretion].)

A parent may petition the juvenile court to change, modify, or set aside a prior court order based on changed circumstances or new evidence if such modification would promote the child's best interests. (§ 388, subd. (a)(1); *G.B.*, *supra*, 227 Cal.App.4th at p. 1157.) A hearing must be held only if the petitioner makes a prima facie showing the circumstances have changed since the prior court order and the interests of the child are promoted by the proposed change. (§ 388, subd. (d); *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806–807.) The court may deny the petition without an evidentiary hearing if the parent fails to make a prima facie showing of either factor. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188–189.) A parent does not satisfy

5

this burden if the allegations "would fail to sustain a favorable decision even if they were found to be true at a hearing." (*G.B.*, at p. 1157.) Courts liberally construe section 388 petitions in favor of sufficiency. (*G.B.*, at p. 1157.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.)

Even liberally construing Mother's petitions, Mother's participation in online narcotics and Alcoholics Anonymous support services and her sobriety — for six and seven months respectively, as stated in her petitions — do not indicate any changed circumstances given her extensive substance abuse history with methamphetamine and alcohol. (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [finding seven months of sobriety since last relapse not a changed circumstance where father had long history of drug use with alternating periods of sobriety and recurring drug use].) In 2018, during the juvenile dependency proceedings involving her other son, J.D., Mother entered a residential treatment program, progressed through treatment, and moved to transitional housing. But she discharged herself before completing the program. Mother continued to struggle to maintain her sobriety through 2020 and had frequent relapses. In February 2020, Mother again acknowledged her substance abuse issues and again tried to seek treatment. She nonetheless relapsed the following month; she used methamphetamine and was observed drinking from a half-pint of alcohol after an incident of domestic violence with Father. In light of Mother's past treatment attempts and subsequent relapses, the juvenile court could appropriately conclude her current sobriety and treatment did not present a prima facie case of changed circumstances to justify an evidentiary hearing on either of her section 388 petitions.

6

Mother's efforts to address M.S.'s exposure to domestic violence presents a much closer case. Leaving " 'an abusive relationship or ending violence is a complex process.' " (*In re I.B.* (2020) 53 Cal.App.5th 133, 156.) After the juvenile court bypassed Mother for reunification services, Mother voluntarily participated in a domestic violence support group and completed a domestic violence course, where she learned about the cycles of violence. Laudably, Mother has gained awareness that she needs to avoid unhealthy relationships, and she has been actively participating in a women's support group. (*Id.* at p. 157 [" 'Because domestic violence is the operation of power and control over the woman, it makes sense that the woman's ability to exercise agency and autonomy within the abusive situation is related to her ability to address the abuse' "].) We further recognize Mother has not had any contact with Father since at least May 2021, and she declared she lacked any interest in a relationship with him. But given the deferential standard of review, the juvenile court could reasonably conclude, based on the procedural history and facts of this case, Mother's efforts constituted allegations that her circumstances were simply changing, not changed — circumstances that are "insufficient to warrant a hearing on a section 388 modification petition." (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1072; *In re Stephanie M.* (1994) 7 Cal.4th 295, 319 [" ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' "].)

Critically, Father was incarcerated during the period of Mother's alleged change. And Father previously cycled through different periods of incarceration and release, with each release marked by Mother abandoning her treatment and other support groups, and resuming her volatile relationship with Father. For example, in 2019, Mother participated in

7

various classes including one regarding triggers for women who have experienced trauma. She occasionally met with a case manager at a women's resource center. At that time, Mother expressed her eagerness to ensure M.S.'s care and safety. But later in October 2019, Father was released from jail and Mother's "level of enthusiasm decreased." In November and December 2019, there were two incidents of domestic violence between Father and Mother, despite the existence of a three-year criminal protective order prohibiting Father's contact with Mother. In March 2020, Mother left a residential treatment program to meet Father; he thereafter assaulted Mother in M.S.'s presence. In May 2020, a social worker reported Mother had again been participating in a domestic violence class but stopped attending. It was not unreasonable for the juvenile court to conclude Father continued to hold sway over Mother, and this pattern of abuse would continue once Father was released from jail. (Compare with *In re I.B.*, *supra*, 53 Cal.App.5th at p. 157 [mother's untangling herself from father's financial control, understanding of what was necessary to permanently leave father, and ability to stay away from father for eight months despite his offers to provide assistance demonstrated changed circumstances] & *In re J.M.* (2020) 50 Cal.App.5th 833, 846 [concluding mother offered substantial evidence she had completed all domestic violence training, she resolved the domestic violence underlying the initial dependency petition, and she had not been in another potentially violent or abusive relationship].)

To the extent Mother argues she presented prima facie evidence of changed circumstances based on her alleged participation in job readiness services and consistent employment between November 2020 and May 2021, we disagree. "Not every change in circumstance can justify modification of

8

a prior order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) Rather, "the problem that initially brought the child within the dependency system must be removed or ameliorated." (*Ibid*.) As relevant here, M.S.'s dependency petition was based on Mother's continued contact with Father, domestic violence, and Mother's substance abuse and mental health issues. Mother's employment was not a critical issue resulting in M.S.'s dependency case. Accordingly, her allegations of sustained employment did not justify an evidentiary hearing.

Finally, even if Mother presented prima facie evidence of changed circumstances — which we do not find — the juvenile court reasonably concluded Mother failed to make the requisite showing that the proposed reunification services and additional visitation would be in M.S.'s best interest. The two section 388 petitions simply stated Mother was M.S.'s biological mother and retaining their familial and cultural relationship was in M.S.'s best interests. She also stated M.S. was happy to see her and identified her as "mom" on their video visits. But "[a]t this point in the proceedings, on the eve of the selection and implementation hearing, the [child's] interest in stability was the court's foremost concern, outweighing any interest mother may have in reunification." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 251–252.) Here, M.S. was detained from Mother when he was seven months old and spent most of his life with foster parents, with whom M.S. was thriving. M.S. looked to his foster mother for his everyday needs. The Agency reported the foster parents provided M.S. with necessary stability and were "committed to permanency through adoption for him." On this record, we cannot conclude the court's decision denying Mother's section 388 petitions without an evidentiary hearing "exceeded the limits of judicial

9

discretion by making an arbitrary, capricious, or patently absurd determination." (*In re E.S.* (2011) 196 Cal.App.4th 1329, 1335.)

## DISPOSITION

The orders are affirmed.

_____

Rodríguez, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.

A162955

11